### WILLIAMS v. MISSOURI VALLEY BRIDGE & IRON CO.

**1.** MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—ACCIDENTAL DEATH—"CAISSON SICKNESS."

Where plaintiff's husband was working underground in a caisson under air pressure, and, on coming to the top of the caisson, entered an air-tight locker from which the air should have been slowly released, gradually reducing the pressure, so that it would be safe for him to come into the open air, but, through inattention or neglect of the employee in charge, the pressure was reduced too rapidly and dizziness or "caisson sickness" resulted, causing him to fall from a ladder which later resulted in his death, the death was caused by an accident arising out of the employment, within the meaning of the workmen's compensation act, for which the master is liable, since the thing which caused his death was not inherent, but came on suddenly, and was caused by inattention and neglect of a co-employee. Distinguishing *Van Gorder* v. *Packard Motor Car Co.*, 195 Mich. 588.

**2.** SAME—OCCUPATIONAL DISEASES.

Nor was the cause of death an occupational disease, which comes on slowly, but the "caisson disease," which was re-

---

Authorities passing on the question of incapacity resulting from industrial or occupational disease, are collated in notes in L. R. A. 1916A, 106; L. R. A. 1917D, 113; L. R. A. 1918F, 872.

sponsible for the accident, developed in a few moments as the result of the inattention and neglect of another, which was the unusual thing, the happening, the accident. Distinguishing *Adams* v. *Color Works*, 182 Mich. 157.

3. SAME—EVIDENCE—SUFFICIENCY.

The showing by plaintiff of her marriage to deceased and support by him, *held*, sufficient to authorize the award made by the industrial accident board.

Certiorari to Industrial Accident Board. Submitted October 12, 1920. (Docket No. 70.) Decided December 21, 1920.

Mary Lee Williams presented her claim for compensation against the Missouri Valley Bridge & Iron Company for the accidental death of her husband in defendant's employ. From an order awarding compensation, defendant and the Maryland Casualty Company, insurer, bring certiorari. Affirmed.

*Stevens T. Mason*, for appellants.

*Emil W. Colombo* (*John F. Kennedy*, of counsel), for appellee.

BIRD, J. During the year 1919, defendant Missouri Valley Bridge & Iron Company was engaged in constructing a bridge over the River Rouge for the Michigan Central Railroad Company. In constructing the concrete piers it was necessary to use a caisson. Plaintiff's husband, Claude Williams, was employed by defendant to work in the caisson. At the time of the accident hereinafter referred to the caisson extended between 70 and 80 feet below the surface. At that depth the men in the caisson worked under an air pressure of from 37 to 40 pounds. When a shift was made the men on duty were brought to the top of the caisson by means of a ladder, where they entered an air-tight locker, 12 feet in diameter and 24 feet in height. After the men entered the locker it was

closed and the air pressure slowly reduced, usually at the rate of a pound a minute. It was shown that if the air pressure is reduced more rapidly than a pound a minute it is likely to result in what is called "caisson sickness" among the men. This is a dizziness accompanied with partial paralysis of the limbs. On the early morning of July 4th, Williams was coming out of the caisson with his companions. They had entered the air-tight compartment and the air was being released. Williams stood on the ladder leading out of the locker. By inattention or neglect, Eaton, the employee who had charge of the valve, allowed the air to escape too rapidly, with the result that Williams became affected with "caisson disease," and released his hold on the ladder and fell on the head of the man below him, striking on his stomach and chest, and later striking his head against the side of the shaft. He was removed from the locker and given medical aid, but survived only a few hours.

Counsel for defendants concedes that plaintiff's intestate met his death through accidental means, but argues that the award is invalid because the fall which produced the injury was caused by conditions peculiar to the industry in which he was engaged. Effort is made to classify the present case among those to which *Van Gorder* v. *Packard Motor Car Co.*, 195 Mich. 588 (L. R. A. 1917E, 522), belongs. It is also sought to bring it within the "occupational disease" cases, of which the lead poisoning case of *Adams* v. *Color Works*, 182 Mich. 157 (L. R. A. 1916A, 283, Ann. Cas. 1916D, 689), is an example.

1. We are not persuaded that the present case falls within the first class mentioned. The reason why recovery has been denied in the first class named is because of some inherent physical defect which was the proximate cause of the injury and which had no causal connection with the employment. Such, how-

ever, was not the situation in the present case. The thing which caused the death of plaintiff's intestate was not inherent. It was a condition which came on suddenly and was caused by the inattention and neglect of a co-employee in permitting the air to escape from the locker too rapidly. The locker was decompressed at the rate of two pounds a minute, whereas it should have been done at the rate of one pound a minute. This produced in Williams what is termed "caisson disease." Herein lies the distinction between this and the *Van Gorder Case.* In that case epilepsy caused the fall. In the present case caisson disease caused it. The epilepsy had no causal connection with the employment. The caisson disease was directly due to it. It, therefore, arose out of the employment.

2. Neither are we persuaded that the case should be classed among the occupational diseases. It is true the testimony establishes the fact that caisson disease develops by the slow process, the same as occupational diseases usually do. Had Williams contracted caisson disease in this manner and his injury and death had resulted therefrom, the argument of counsel would have great force, but the caisson disease, which was responsible for this accident, developed in a few moments as the result of the inattention and neglect of another. In this inattention and neglect we find the unusual thing—the happening—the accident.

3. Objection is raised to the award because plaintiff did not establish her right to it. We think the testimony showing the marriage and support was ample to authorize the award which the board made in the premises.

Being impressed that the board reached the right conclusion, their award will be affirmed, with costs to the plaintiff.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred.